I was making it more difficult for him to do it. The district court determined that the proper testimony was not clearly exculpatory. Is that not the basis of his ruling? All right. So what's the standard of review that we apply to that? That it's finding a fact that has to be clearly aligned? So doesn't Thomas foreclose then our overturning that factual determination? I mean, isn't it by definition not clearly exculpatory since there were credibility determinations that would be at stake? I think my colleagues would readily agree that if Judge Sloboda were here, she would have promptly corrected you on the pronunciation of her name. It would leave about two feet shorter than you came in. I was sitting on a panel with her one time, and a lawyer was arguing from England, and he pronounced her name Slo-writer, and I thought she was going to have a heart attack. And he did get out of the courtroom alive, but just barely so. But isn't it true that if the jury believes Hunt, they might come out one way, and if they believe Francis, they could come out another way? Isn't that what the credibility assurance is? Well, wasn't it the suggestion that Mike had told Hunt that you could – the only thing you would get is a haircut, which means that maybe you could take the weight for this case and you would not get as serious a sentence as I would get. And that's a statement that essentially admits his knowledge, which is different from Francis. So if the jury believes Hunt, they might favor the government side. But if they believe Francis, they might believe Mike. And that is a credibility issue. Well, you're arguing then that the problem here is not that there might not be, given what was posed in Judge Hunt's question, a credibility question. You're saying the error that was made was that the judges didn't adequately explain or take that into account in his written ruling? Yes. Encouraged but not required. I'm just curious as to what happened there. It was written in the statute. I don't know who wrote it. I don't know why it was included in the statute. And again, you can't just voice what happened there. There was a reason for it. I don't know why it was included. I don't know why it was. So why was that? The time here is strange. It already entered his plea, which was I thought strange, before Mike's trial. Usually a testifying co-defendant, you continue the trial until after he testified. That didn't happen here. Why was the proffer delayed until the day before Mike's trial? Do you know? Do you know when they got the proffer? Did you know it said that? Who testified about the phone calls? Was that through the record, the phone company record? The hunt testified about that. There were calls between Mike and Francis when the weapon was shipped, when it purportedly arrived. How did they find out about that? I don't know. I don't know. I don't know. I don't know how you would do this. You couldn't do a grand jury of that much. You could then ask them what was the content of the telephone call. You couldn't. The prosecutor certainly couldn't. I don't know. I don't know. I don't know. I don't know. I don't know.  It's not a term of art contained within the statue itself, is it? No, it's not a term of art, is it? I mean, isn't the language capable of discharging meaning? No, but the expert testified that it was capable of ejecting a projectile through the use of gas, whatever the terminology is. What do you understand a test firing means to actually shoot a bullet? What's the problem with proving that mechanically it is capable of discharging a bullet? Why wouldn't it be capable of discharging a firearm if it was tested before he gained possession of the weapon? But if you're right, it means that in a case like this, the government would have to intercept a very dangerous weapon, then put that weapon in its pristine state back into the mail and ship it, knowing that if it's misdelivered somehow, or if they blow the surveillance at the other end, they've just delivered an AK-47 to somebody, or somebody out there in the hinterlands has an AK-47 capable of firing a bullet. That would be the result of your argument, that the government could not, one, follow up and investigate crimes, or disable weapons. They have to decide, either disable those weapons, which means you can't prosecute the guy who gets it for that charge, or don't disable it, send it, and run the risk that you're putting an AK-47 into someone's hands. I mean, you would be satisfied with operability if it was actually tested and fired, you would be satisfied with that, even though it was delivered without a bullet. So your problem is that it wasn't actually tested to fire a bullet. Why isn't that a jury question? You have some time on your button, I think. You broke it, Mr. Jones. How are you doing? Good, good. Good seeing you again. Maybe Ms. Wiggins broke it. Someone broke it. Maybe you're just a little broke. We can hear you. We can hear you. Can you record? It's a factory cordation. Are you recording? Yeah. Good. Maybe Mr. Velaygas broke it. Thank you. Thank you. Good morning, honors. My name is Nelson Jones. I represent the Appellate United States of America and the people of the Virgin Islands in this matter, United States v. Jamal Mike. Mr. Jones, both sides agree on the test. I guess it was a five-factor test out of France. You're arguing that the defendant did not make three, four, and five. That's correct, Your Honor. But, you know, one, it's clearly exculpatory evidence. So if the jury accepts it, how can you say it's not exculpatory evidence? I'm not saying it's not exculpatory. I'm saying it's not clearly exculpatory. In this instance, as the district court judge found, there would have to be a credibility determination, even if you take— That's true whenever anybody gets on the witness stand, though. The cases that we're relying upon here for credibility determinations are situations where the witness's testimony clearly contradicts another witness in the case. Here you have a situation where you're relying upon the fact that you have to make a credibility determination, which is always the case when everybody gets on the stand. If what you're saying is really the test, then there is no such thing as judicial immunity anymore because the witness who is immunized will always be in a situation where there will be a credibility determination. I agree that it's always a credibility determination when we have a witness testify. However, in this case, we have one set of facts dealing with the fact that there were phone calls between the defendant and the co-defendant. What if he admits those calls? If he gets on the witness stand, yeah, I called him when I shipped him the package. I called him a few days before that. I called him when I was in transit, and I called him before I got there. But I didn't tell him what was in the package. We were talking about—I wanted to make sure he got the package. Now, the jury may say that's bunk, but that's why we have cross-examination, because that doesn't make it inconsistent. But you also have additional evidence, Your Honor. You have the evidence of Mr. Mike soliciting a minor to actually go into the post office to retrieve the file. You have Mr. Mike providing— But how is that inconsistent with anything Francis would testify to? Because it would show that he was trying to cover himself, make sure that he wasn't identified with the package that was coming in, which would lend credence to the fact that if he's trying to keep himself clear of the package, he knows what's in the package. What if he thought that heroin was in the package? What if he thought? What if he thought heroin was in the package? But that's just it. He claims he didn't know what was in the package, period. And based on the other testimony the government had, the fact that the package was under one name, Imon Thomas, and Mr. Mike knew what that name was when he gave the slip to Mr. Hunt to retrieve the package, the fact that Mr. Mike knew what the tracking number was for the package, the fact that Mr. Mike used his minor to go obtain this package, and the fact that he used Mr. Reed's post office—Mr. Reed's father's post office box to ship the package to, all shows his efforts to conceal himself or to keep himself away from the package. Why wouldn't that be exactly what you argued in the jury when you cross examined Francis on that ground? But to say that Francis can't get on the witness stand and testify without being hit with a perjury and thereby keep off of the witness stand the only direct evidence that Francis can produce that Mike can produce of his innocence, of his purported innocence, seems to me—isn't that kind of governmental overreaching? You cross examine—everything you're saying is very sound, and that's why we have cross examinations. I don't believe it's governmental overreaching because, first of all, the problem was made by the—by Mr. Francis' attorney in when—after the plea had been reached. Subsequent to that, the government asked the defense attorney if, in fact, his client would be cooperating. He said no. He subsequently told us that his client would—if his client was called to testify, he would testify. They didn't tell Mike or Reed what was in the package. The government then informed his attorney that based on the evidence we had, that the government had, that story didn't match. When did the government get that proffer? Were you the trial attorney? I was the trial attorney, yes. When did the government get that proffer? That was either Thursday or the Friday subsequent, just prior to the trial. But the plea took place, I think, either Wednesday or Thursday prior to trial, and the proffer from the defense attorney was made, I think, either Thursday or Friday. And the trial started on Monday? Correct. And by then, Francis had already pled guilty to the charge relating to the weapon? Francis had pled guilty to the shipping of the weapon before the magistrate judge, so the plea had not been accepted by the district court judge. He pled before the magistrate judge, and she indicated that she would recommend that the plea be accepted, but at the time of trial, the plea had not been accepted by the district court judge. But it could have been, because he asked for a continuance. He usually times it so that Mike's fraud didn't go forward until after Francis had pled. It could have very easily been. He probably could have agreed to it, because he wanted more time anyhow after he got the proffer. I didn't hear you, Your Honor. I didn't hear you, Your Honor. He probably could have very easily agreed to a continuance because, assuming the judge went along with it, because the defense counsel wanted more time anyhow, it seems to me more time then also puts the government in a position where they can get Francis' plea accepted, lock Francis in to a guilty plea. That doesn't resolve the issue of immunity, but at least it makes sure that Francis doesn't slip away from it. That was an option, but the trial court determined that based on their reading of Thomas, the information that Thomas, that Francis had, was not clearly exculpatory. In fact, if you recall, I'm sure you do, the district court didn't rule on the defense request for immunity immediately. They allowed the trial to proceed, heard some testimony, and then at the conclusion of the government's case at the Rule 29 argument, when the defense counsel for Mike asked whether the court was going to grant the defense immunity, that's when the court made a ruling that no, it was not going to grant it. By that time, the court had heard all the evidence the government had. I just have a couple of findings. One, what would be clearly exculpatory? As I said earlier, there will always be some evidence of guilt, but you never get to the indictment. If you have some evidence of guilt, enough evidence of guilt to get you a trial, and there's a defense witness out there who is going to say something on the witness stand, which is going to help the defendant, pulling in the sword, however you want to characterize it, it's never going to be clearly exculpatory evidence, given what you're arguing, because there will be innocence of guilt. And all you're arguing is, well, there's innocence of guilt. Therefore, Mike's testimony or Francis' testimony is not clearly exculpatory because the jury has to make a determination, a credibility determination. That's true in every single trial. So what's left of the doctrine of judicial immunity?  In Thomas' court rules, you have the five factors. One of them is clearly exculpatory. I understand, but what I'm saying is given what you said in Thomas and I think also in Perez, if that's what the court intended, then there's really nothing left of the doctrine of judicial immunity. It couldn't have meant what you're arguing it means, because you'll never have clearly exculpatory witnesses in that situation, never. The evidence that was proposed to be presented by Francis was he did not know what was in the box. He did not tell Mike O'Reilly what was in the box. Okay. That was it. Now, if you put aside Hunt's testimony for a moment, not testimony, the idea that he was supposed to take a haircut, isn't that clearly exculpatory? In other words, wouldn't the defendant in the case have to know what's in the box in order to be charged with possession of the weapon? He would have to know what's in the box to be charged with the receipt of the firearm. So if the jury believes Francis' testimony, if he had testified, wouldn't that be clearly exculpatory? If they believe what Francis had said without outweighing the testimony of the other witnesses, not necessarily. It all depends. They may have felt that the government had met its burden, period. It's an element of the offense. It is, certainly. If somebody comes along and says, no, he did not know what was in the box, if the jury believes that, how could it not be exculpatory? It is exculpatory. No question it's exculpatory. Why is it clearly exculpatory? Because then the issue comes in, what do you have on the other side? And that's what Thomas told us. Thomas said, okay, you have this testimony here. You have this testimony over here. They can't be- Well, that's my concern. You're saying it's not clearly exculpatory because there's evidence of guilt. That's what you're saying. There's evidence of guilt that contradicts what Francis' testimony would have been. If Francis is saying what the problem was, he would say that he did not tell Mike or Reed what was in the box, period. That's the only problem we had. He would say that Mike nor Reed was told what was in the box. But then you have the other testimony of the use of a false name, false label on the box, which Mike knows. Francis is the one that fills out the information as the sender. He's in Orlando. Mike knows the false name. Mike knows the tracking number. There are phone calls between Mike and Francis at the time of the purchase of the firearm. If you recall, the first time that Francis went into the gun shop, he didn't have sufficient money to purchase the firearm. He called him in that instance, within minutes of going into the gun shop on the first day. While he was within minutes of being in the gun shop. When he picked up the gun after the Brady check, he called Mike again. And there were conversations, there were calls made within one minute, two minutes, three minutes of each event. Was Francis confronted with any of that during the process? There was no problem between the government and Francis directly. The problem came from his defense attorney. The government never spoke to Francis because his attorney said this is what he's going to say. And basically he said, okay, if that's what he's going to say, our position is it doesn't jive with the information we have. What is your take on the standard of review? Judge Smith asked earlier about what I take it to be the deferential standard of review of the judge's findings. You have to be clearly on the show. I think, I'm sorry, no, go ahead. I think the fact that the trial judge has sat through the government's case in its entirety. Before making his ruling, he has heard the testimony of all the witnesses. He has made his own federal determination of these particular witnesses. And in light of having Francis' testimony, as far as him claiming that neither Mike nor Reed knew what was in the box, he couldn't see it. Mr. Jones? Yes, sir. Both sides have referred to our Thomas opinion. And in fact, a few moments ago in discussing the evidence in this case, you used the word contradict. And I'm wondering if perhaps in using that word you might be making the hurdle even higher for yourself than is necessary. Because I note that in our Thomas opinion, in discussing the clearly contradictory prong, what Judge Slobodur did in assessing this evidence was to note evidence that, per use of the word, undercut Thomas' theory and elsewhere testimony that undermined Thomas' theory. That would seem to suggest that if the record has evidence that undercuts or undermines, that ought to be enough, maybe not always, but that ought to be enough to preclude a determination of clearly exculpatory. I agree. Basically, what you have, as I indicated beforehand, if an argument is made to the jury that they don't know what's in the box, it defies logic then why you've taken all these steps to shy away from seeing this box. Again, the false name, the tracking number, the false address out of Orlando where the firearm was shipped from, the telephone calls within close proximity to each event from the purchase of the firearm to the second visit to the firearm store to the shipping of the firearm to the delivery of the firearm. All those events had phone calls between Mike, Francis, and Reed. All of them. Primarily between Mike and Francis. In a situation like this where the defendant really only has one witness, shaky as that witness may be, and this witness is about as firm as a pipe cleaner, why not just let the witness testify? You beat him up on cross-examination with everything that you've disargued. Argue to the jury that you heard the nature of the judicial immunity. We can't prosecute him for perjury. You have to assess his testimony. Keep that in mind. Go through all the contradictions between what he said and what's in the record. Then argue to the jury that what really tells the story here is the fact of the phone conversation, the fact of the false name that only Mikey knew, the fact that the kid was told, you're only going to get a juvenile hit for this, don't worry about it, and it defies credulity to believe that Mikey didn't know what was in the box because if he didn't know what was in the box, he's the only one who didn't know what was in the box, and he's the one making the arrangements. Rather than creating a situation where the defendant is deprived of the only fact witness that he had. The district court asked counsel based on Thomas, what is their position? I'm sorry, based on Thomas? Based on Thomas, based on Thomas' decision from the panel of the circuit, what was the government's position, what was the defense's position? And we submitted to the court that based on Thomas and the clearly erroneous requirement, one of the five factors that was required to be met by the defendant, we have this credibility issue, then it's not clearly erroneous. And based on, I think if the court had made this rule, I see my time has run out, ma'am. Complete? I think if the court had made a determination prior to hearing any testimony, I think that the defendant would be on stronger ground. But where the court has already heard all the testimony of the government's case, all the government's witnesses, and has made a determination based on that testimony, and what Francis is claiming, it was definitely a credibility issue that the jury would have to make. And based on that, the court found that it would not meet the standards enunciated in Thomas in terms of it not being clearly erroneous. If we get past the immunity issue and we get past the operability issue, there is a question that I had some concern about, which is the immediacy question, whether the defendant was given an opportunity to register a weapon, which is an affirmative defense. That's correct. And apparently he was not given – immediacy seems to me a jury question, I mean, just off the top of my head. But he asked for a jury charge, did he not? He did. But the judge refused to give the jury instructions with respect to immediacy. That's correct. Now, why isn't that error? It is not error because if your defense is that I had no idea what was in the box, no clue, I didn't know anything. Well, why can't you have an alternate defense? Let the jury resolve it. I didn't know what was in the box, but if you find that I knew what was in the box, I could not possibly have registered anything. Oh, my goodness. Someone shipped me an AK-47. This has got to be a mistake, but I better register this AK-47. Never have I. Basically, what you have there, Your Honor, is a firearm being shipped, the defendant claiming I don't know anything about any gun. To be entitled to an instruction, there has to be evidence to support the instruction. That's correct. What was the evidence? First of all, I assume you are conceding that even with the amended 470B, this is still an affirmative defense. It's still an affirmative defense. That being the case, there would have to be evidence presented that would support that affirmative defense. What was the evidence here that would have supported the defense under the new version or the amended version of 470B? The only evidence that would support the 470B would be the testimony of Agent Stevens, Post Inspector Stevens, in which he talked about the fact that once the gun was placed in the vehicle, the agents immediately went and made the arrest. I certainly want to hear even more from Mr. Villegas on this, but aren't we also confronted with a real contradiction here in the defendant arguing an affirmative defense, I intended to immediately register this firearm when his defense all along is that he doesn't know that it's a firearm. And that's my argument, that they can't meet, they can't mesh, and therefore, it defeats the whole purpose of his argument concerning the fact that he didn't know what was in the box. Okay, if he didn't know what was in the box, how could he possibly have intended to register it? I mean, it may be that as a matter of trial strategy, it would be appropriate for the defense to seek to sever off this charge from trial from the other charge that was at stake. But in any event, there would seem to be a contradiction. There's a clear contradiction, Your Honor, a clear contradiction. Because you're saying, okay, the firearm has arrived, I don't know what's in the box, I have no clue what's in the box. But I was going to immediately register it at the police station. It can't happen that way. It can't happen, that's just- Unless he just registers all the boxes he gets. It just defeats logic. Until this time, he's running to the commissioner, registering all those boxes. It just defeats logic. And you have an AK-40- Was there a co-defendant in the case? There were two co-defendants. Did a co-defendant request a jury instruction? No. I think he joined after Mr. Mike's attorney requested a jury instruction. Okay, thank you. But he initially did not request a jury instruction. Thank you, Your Honor. Thank you, Your Honor. In regard to this third issue about the denial of the jury instruction, I understand the court's concern regarding his alternative defense, so to speak. It would- So to speak. But it would seem appropriate, though, if the jury concluded that he did intend to possess this weapon, that the alternative the jury could decide whether or not he still had that alternative defense of intending to immediately report. Was there any evidence that would justify the jury instruction? Well, I don't think so, simply because they were never allowed to leave. It was a controlled delivery in law enforcement. Are you saying he didn't know what was in the box? Yes. Well, he did testify, but sure, that was at least part of the defense in terms of cross-examining. I don't know if anyone other than Mr. Francis knew what was in that box. But the contents of that box was important, and the jury must have concluded that he knew what was in the box. So once that conclusion is made, we believe he had a right to have that instruction about what his intent or someone else's intent, his co-defendant, in regard to complying with the local Virgin Islands statute. And although- Even though he clearly took steps to avoid any connection between him and the box, false name, send somebody else in, pick up the box, nevertheless, once he got the box, he was going to register what was in the box, even though he didn't know what that was. Well, the false name was written by Francis, and yes, it was received in the box belonging to, I believe, Mr. Reed's father, Mr. Reed, Jr. And so, yes, all of those steps tend to lead us further away. But again, once the jury has decided that he did know what was in the box, then we think alternatively, was there an intent to register? And we think that instruction should have been granted. And if I can just address one other issue regarding the exculpatory nature of what Mr. Francis would have said, because I think it's highlighted in counsel's rebuttal argument at the end. And in the end, counsel says, and he's creating the appearance that he is talking to Mr. Francis. I mean, he's Mr. Francis talking to our client, Mr. Mike, and he says, I'm mailing a package down to you containing a gun. I got a gun coming in the post office. I need you to pick it up. Well, that was not objected to. But what that goes to is that goes to the exculpatory nature of what Mr. Francis would have said. Counsel filled in the content of that phone conversation in an attempt to convince the jury that's really what was discussed during that phone conversation, even though there was no mention of it whatsoever. And that is really where the prejudice occurred without Mr. Francis' testimony, because he would have said exactly the opposite of what counsel said. I mean, Francis would have escaped cross-examination. I mean, he would have looked really silly. He would have had to say that in all the conversations he had with Mike, he never mentioned what he was sending to him. Coincidentally, on the other end of the conversation, Mike took those steps consistent with the illegal receipt of a gun, just by coincidence. False name, sending somebody else in to pick up the box. Didn't know what was in there, even though Francis had conversations with Mike. The day the gun was shipped, talking the day he bought the gun, he didn't have enough money. The first day, as Mr. Jones reminds us, calls Francis and Mike on that day, goes back the next day, actually buys the gun, calls Mike on that day. I mean, is this possibly a case of harmless error? This is knowing where Francis could have escaped cross-examination. The jury could not have believed Francis' statement, could they? That he didn't tell Mike what was in that box? Well, it could have. And, again, if there was an evidentiary hearing, and for limited purposes of this hearing, Mr. Francis was given immunity, we could explore the contents of those phone conversations. We do know that they were lifelong friends and they frequently spoke on the phone anyways, but certainly the timing of these phone calls within the delivery of the package would have been significant. So are you asking us to remand to the district court for an evidentiary hearing on the immunity question? Yes, sir. I believe that is appropriate under these circumstances. Well, that's the answer I know. That's an easy one. Yes, simply because we need to really – if there was use of immunity that was properly exercised and we find out that there isn't any merit other than to what Mr. Francis has proffered, then due process has been afforded our claim. So believe me, you have to vacate all that happened in the district court, right? I mean, supposing you're right about the immunity issue. Well, yes, except for the Virgin Islands charge. I believe under Rule 29, summarily, that evidence won't change and that charge could be dismissed depending on how you rule on the operability of that file. Thank you. Thank you very much. Thank you, Mr. Counsel. We'll take the matter under advisement. The next matter is the government of the Virgin Islands v. Oswald Mills.